IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MARK PERCY MONROE,

      Petitioner,

v.                                     CASE NO. 1:10-cv-244-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

      Respondent.

_____/

## AMENDED REPORT AND RECOMMENDATION

The Court's previous Report and Recommendation (Doc. 24) is withdrawn and is replaced with this Amended Report and Recommendation.

This case is before the Court on Doc. 1, Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The Petition stems from Petitioner's Alachua County jury-trial conviction for sexual battery, for which he received a 25-year sentence of incarceration. Respondent has filed a response and appendix with relevant portions of the state-court record, and Petitioner has filed a reply. (Docs. 15, 16, 19.) Upon due consideration of the Petition, Response, Reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## Summary of State-Court Proceedings

Petitioner was charged with sexual battery in August 2007. A jury trial was held in March 2008, and Petitioner was convicted as charged. The evidence adduced by the

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

State at trial, mainly through the testimony of J.P. ("Victim") may be summarized as

follows.

The Victim was a dancer at Decadence, a Gainesville nightclub. Petitioner was

a patron of the bar, who sometimes worked there as an amateur DJ and emcee

introducing the dancers. Through his involvement at the nightclub Petitioner and Victim

knew each other and had become friends. Petitioner had asked Victim out a few times

but she had refused.

Earlier in the day on May 18, 2007 Victim agreed to meet Petitioner for breakfast

after her shift at Decadence ended that evening. The two met for breakfast at IHOP in

Gainesville around 3:00 a.m. on May 19, 2008. During the course of the meal,

Petitioner suggested that Victim should not drive back to her home in Hawthorne

because she had been drinking during her shift at the club and one of her tail or brake

lights was not working. Petitioner suggested that the two get a hotel room instead. After

initially refusing, Victim agreed to spend the night in a hotel room with Petitioner. Victim

followed Petitioner from the IHOP in her own car to a hotel. The first hotel did not have

any vacancies. She then followed Petitioner to a Travelodge, where Petitioner obtained

a room.

The room at the Travelodge only had one bed. Victim entered the room and laid

down on the bed under the covers, but on top of the sheets, wearing a t-shirt, shorts, a

bra and underwear. Victim testified that she laid on top of the sheets in order to create

a barrier between her and Petitioner. Petitioner went into the bathroom when the two

entered the room, and when he exited the bathroom he was wearing only his boxers.

Victim testified that she was lying on her left side, facing away from Petitioner. After

Petitioner got into bed and realized that she was on top of the sheets, he moved so that he was also on top of the sheet.  He then began to kiss and grope Victim, and began to pull Victim over onto her back.  She told him either no, or stop, more than once. Petitioner told her to let him do it, and that he had not paid for the hotel room for nothing.  After Petitioner turned Victim onto her back, he got on top of her and forced her legs apart with his hands.  Victim testified that he pulled her shorts and underwear to the side, held her down and began having sex with her.

Victim estimated that Petitioner penetrated her vagina with his penis for about a minute, and after he stopped, he got up and went to the bathroom. She could feel that he had ejaculated on her.  After Petitioner got up from the bed, Victim testified that she rolled over onto her left side again and did not leave because she was afraid of Petitioner.  When Petitioner returned from the bathroom he asked Victim whether they were still cool.  She testified that she told him yes because she did not want him to rape her again.  Victim testified that her plan was to pretend to fall asleep and leave after he fell asleep; however, she ended up falling asleep herself.

She woke in the morning to the sound of a car alarm, and Petitioner told her to go back to bed.  Petitioner then got on top of her.  Victim told him that she did not want to, and that she had not wanted to the night before.  Petitioner then offered her $50 to have sex.  She declined and told him she wanted to go home.  Petitioner got off from on top of Victim and said something to the effect of, "what, you don't like me anymore?" Victim testified that she gave him a kiss on the cheek to make him think that she was not mad and then left the hotel, purchasing gas for her car on her way home.

After she returned to her home, Victim called her friend Shannon and described

what happened. Shannon convinced Victim to call law enforcement. After that Victim

went to Alachua General Hospital and a rape examination was performed. While she

was at the hospital Petitioner called Victim. When Victim answered she put the call on

speaker phone so that her friend Shannon and Deputy Michael Jarvis of the Alachua

County Sheriff's Office, who were in the room with her, could hear the conversation.

Petitioner asked Victim whether she was ok, and when Victim asked him why he did

what he did to her, Petitioner denied that anything ever happened. Petitioner asked

Victim whether she had called the police because a friend of Petitioner's from the hotel

had called him and informed him that police were searching the hotel room and asking

about him.

The state also called as a witness the emergency room physician, who

performed a rape examination on Victim. The emergency room physician testified that

Victim's back was tender to palpitation, and there was redness on her cervix consistent

with sexual activity. The doctor, could not, however, determine whether it resulted from

consensual or non-consensual sex.

The state also called several law enforcement officers who responded to and

investigated the matter.

At the close of the State's case-in-chief the defense moved for a judgment of

acquittal. The court denied the motion, finding that the jury could believe the testimony

of the Victim. (Ex. B at 234-235.) Petitioner elected not to testify.

Following closing arguments, the court instructed the jury on the elements of

sexual battery, as well as the lesser-included offense of battery. The jury found

Petitioner guilty of sexual battery and Petitioner was sentenced to twenty-five years

imprisonment. Petitioner appealed on one ground. Petitioner alleged that "[t]he lower

court violated Appellant's right to due process and to trial by jury by making factual

findings that were neither pled in the information nor found by a jury on proof beyond a

reasonable doubt which enhanced the maximum term of imprisonment that could be

imposed by ten years." (Ex. F.) The Florida First DCA *per curiam* affirmed. (Ex. H;

*Monroe v. State*, 12 So. 3d 224 (Fla. Dist. Ct. App. 2009).)

Petitioner then filed a Fla. R. Crim. P. 3.850 motion for post-conviction relief,

asserting that "the Defendant alleges that the state presented insufficient evidence to

sustain his conviction of sexual battery. Where the issue boiled down to whether the

victim consented or not. And the victim being the state's sole witness. It is a manifest

injustice to allow the jury's guilty verdict to stand!" (Sic.) (Ex. J.) The motion was

denied without an evidentiary hearing, and Petitioner appealed the denial of his motion

to the First DCA, which *per curiam* affirmed. (Ex. K; *Monroe v. State*, 26 So. 3d 585

(Fla. Dist. Ct. App. 2009.))

Petitioner then filed the instant Petition, which Respondent concedes is timely.

Petitioner asserts one ground for relief: that there was insufficient evidence to convict

him of sexual battery. Respondent contends that Petitioner's sufficiency of the

evidence claim was not presented in Petitioner's direct appeal and therefore this claim

is unexhausted and foreclosed from federal review. Respondent alternatively contends

that Petitioner is not entitled to relief on the merits of his claims.

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all

state court remedies that are available for challenging his conviction, either on direct

appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's

application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them.") *See also, Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court" on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,*

535 U.S. 685, 694 (2002) (citing *Williams* ).  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13.  "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original).  Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it."  *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002.))  "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an

opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir. 2002) (summarizing the emerging circuit split.)) The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

### Discussion

Petitioner's only ground for relief in his Petition is that "[t]he state's evidence was refuted by reasonable hypothesis of innocence, rendering the evidence insufficient to warrant a conviction." Petitioner also contends that he is actually innocent.

As the State points out this claim is unexhausted and, thus, procedurally defaulted. Before bringing a habeas action in federal court, a petitioner must exhaust

all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999.) To satisfy the exhaustion requirement of federal habeas claims, a prisoner must first "fairly present" his claim to each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct the alleged violations of its prisoners federal rights". *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). *Picard v. Connor*, 404 U.S. 270 (1971.)

In Petitioner direct appeal of his conviction, Petitioner raised only one ground for relief. Petitioner describes the issue as: "[t]he lower court violated Appellant's right to due process and to trial by jury by making factual findings that were neither pled in the information nor found by a jury on proof beyond a reasonable doubt which enhanced the maximum term of imprisonment that could be imposed by ten years." (Ex. F.) This claim relates only to Petitioner's sentence and not to the evidence underlying his conviction. Thus, Petitioner did not present on direct appeal his claim that the evidence was insufficient to convict him. In denying Petitioner's 3.850 motion, the state court found that Petitioner's claim that the evidence was insufficient was procedurally defaulted. The state court stated that "a defendant cannot challenge the sufficiency of the evidence underlying his conviction through a rule 3.850 motion, especially where there has been a direct appeal . . . Thus, the instant claim is procedurally barred." (Ex. J at 81.) Accordingly, because Petitioner did not challenge the sufficiency of the

evidence on direct appeal, this claim is unexhausted and procedurally defaulted.

Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim was not considered. *Bailey*, 172 F.3d at 1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). Petitioner makes no argument that he can establish cause and prejudice to overcome the default, and to the extent Petitioner is attempting to assert a claim of actual innocence in order to escape the procedural bar of his claim, he is unable to do so.

A Petitioner's actual innocence may serve as a gateway to consideration of constitutional claims procedurally defaulted in state court, such as failure to exhaust state remedies. *Rozelle v Sec'y, Dep't of Corr.*, 672 F. 3d 10001011 (11th Cir. 2012). The Supreme Court has cautioned, however, that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggen v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1928 (2013). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995.) Petitioner alleges no new evidence to justify his claim of actual innocence.

Moreover, Petitioner's claim of actual innocence is insufficient to pass through the gateway because his claim of innocence is based upon his argument that there was insufficient evidence at trial to convict him, an argument that at best raises a claim of legal innocence and not factual innocence. The Eleventh Circuit has drawn a distinction between legal innocence and factual innocence. Thus, under *Schlup's* actual innocence requirement, factual innocence is required and not merely legal innocence. *See, e.g. Johnson v Alabama*, 256 F. 3d 1156, 1165-66 (11th Cir. 2001)(District Court's dismissal of procedurally defaulted § 2254 petition affirmed where Petitioner's claim of actual innocence was based upon insufficiency of evidence at trial.); *Gonzalez v. Sec'y for Dep't of Corr.,* 366 F. 3d 1253, 1274 (11th Cir. 2004)(*en banc*)("Actual factual innocence is required; legal innocence is not enough.")

Lastly, to the extent that Petitioner is attempting to assert a freestanding claim of actual innocence he cannot do so because "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390 (1993); *Jordan v Sec'y, Dep't of Corr.* 485 F. 3d 1351, 1356 (11th Cir. 2007).

Accordingly, for these reasons, Petitioner has failed to demonstrate that he may avoid the procedural default of his claim through the actual innocence gateway.

Even assuming, however, that Petitioner's claim was not procedurally defaulted, Petitioner is not entitled to federal habeas relief on the merits of the claim.[2] To the

---

[2] Pursuant to 28 U.S.C. § 2254(b)(2), a habeas petition may be denied on the merits, notwithstanding Petitioner's failure to exhaust state court remedies.

extent that Petitioner contends the State's evidence did not refute a "reasonable hypothesis of innocence" the claim is one founded on state law[3] and therefore is not cognizable on federal habeas review. *See, e.g. Estelle v McGuire*, 502 U.S. 62, 67-8 (1991)("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law issues.")

To the extent that Petitioner is claiming that there was a total failure of proof and, thus his due process rights were violated, the Court must utilize the standard established in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979.) Under *Jackson* when reviewing a claim regarding the sufficiency of the evidence the Court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* "In determining whether the facts of a particular case satisfy the *Jackson* standard, it is necessary to refer to the essential elements of the crimes as defined by state law." *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987) (citations omitted.)

Florida law provides that "[a] person who commits sexual battery upon a person 12 years of age or older, without that person's consent, and in the process thereof does not use physical force and violence likely to cause serious personal injury commits a felony of the second degree." FLA. STAT. § 794.011(5). Testimony from the Victim, if believed, established these essential elements of the charge of sexual battery. Victim

---

[3] Under Florida law there is different standard for review of cases based entirely upon circumstantial evidence. *State v. Law*, 559 So. 2d 187, 188 (Fla. 1989)("A special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence. [cite omitted] Where the only proof of guilt is circumstantial ... a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.")

testified about the circumstances that resulted in the Petitioner and her spending the night at the Travelodge hotel. She recounted that Petitioner began to fondle her on the bed, pulled her onto her back and then after she said "no' several times, Petitioner forced her legs apart and started to have sex with her. Victim testified that Petitioner's penis penetrated her vagina and he ejaculated on her. As such, Victim clearly and unequivocally testified that Petitioner had sex with her without her consent.  The jury choose to believe Victim's testimony that the sex was not consensual. Thus, on this record, and viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime of sexual battery beyond a reasonable doubt.  Petitioner has, therefore, failed to demonstrate that the state court's rejection of this claim was contrary to, or an unreasonable application of, federal law.

Lastly, although Petitioner has not raised a stand alone claim of ineffective assistance of counsel, he states in the argument section of his brief that "[e]ven though the Petitioner's defense counsel didn't to subject the information to a true adverse test process. (Exhibit D)."  Petitioner goes on and states: "Petitioner invocation of the Postconviction relief based on ineffectiveness of counsel where constitutional infirmities in the trial occurred, required the lower tribunal to secure Petitioner's rights via evidentiary hearing and subsequently a dismissal of the case based on insufficient evidentiary facts." While these statements are insufficient to raise a claim for ineffective assistance of counsel – even if they were – Petitioner's claim of ineffective assistance of counsel is  due to be denied for several reasons.

First, any claim for ineffective assistance of counsel is unexhausted and,

therefore, procedurally barred.  Petitioner did not present an ineffective assistance of counsel claim at the state level.  Although Petitioner cites Exhibit D in support of his claim, it is unclear how this exhibit supports his claim.  Petitioner's Exhibit D is his *pro so* Rule 3.850 motion for postconviction relief. In his Rule 3.850 motion Petitioner presented the only ground as: "the state presented insufficient evidence to sustain his conviction of sexual battery. Where the issue boiled down to whether the victim consented or not. And the victim being the state's sole witness. It is a manifest injustice to allow the jury's guilty verdict to stand!" (sic.) Thus, it is clear that Petitioner has not presented any claim of ineffective assistance of counsel at the state level.  Moreover, Petitioner has made no argument that he can establish cause and prejudice to overcome the default. And as discussed above, he fails to make a showing of actual innocence to escape the procedural bar to an unexhausted claim.  Therefore, this claim is procedurally defaulted and is due to be denied as such.

Even assuming, however, if this claim was not procedurally defaulted, Petitioner has provided no basis for federal habeas relief on the merits of the claim.  Petitioner has failed to make any argument identifying the conduct of his counsel which he alleges was constitutionally deficient nor has he pointed to any prejudice as required by *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984).   In the absence of evidence of either of these prongs of *Strickland* Petitioner has not presented a cognizable claim for ineffective assistance of counsel. Therefore, any claim for ineffective assistance is due to be denied.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a

certificate is issued "the court must state the specific issue or issues that satisfy the

showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be

filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing

Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional

right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

Therefore, the undersigned recommends that the district court deny a certificate of

appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct

the parties to submit arguments on whether a certificate should issue." Thus, if there is

an objection to this recommendation by either party, that party may bring this argument

to the attention of the district judge in the objections permitted to this report and

recommendation.

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for

a Writ of Habeas Corpus, Doc. 1, should be **DENIED,** and a certificate of appealability

should be **DENIED**.

**IN CHAMBERS**, at Gainesville, Florida, this 4th day of February 2014.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**